## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON C. SHAUF, | : | CIVIL ACTION NO. 1:19-CV-1911 |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| RICHARD MARSH, PA STATE | : | |
| ATTORNEY GENERAL, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Jason C. Shauf ("Petitioner" or "Shauf") filed the instant

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Shauf

seeks relief from a sentence of life in prison in addition to an aggregate sentence of

42 to 84 years' imprisonment entered in the Court of Common Pleas of Franklin

County, Pennsylvania, on January 7, 2015, in criminal case CP-28-CR-0000007-2013,

following his December 17, 2014 conviction for second-degree murder, burglary,

robbery, kidnapping, unlawful restraint, criminal conspiracy to robbery, and

criminal conspiracy to burglary.  The petition is ripe for disposition.  For the

reasons set forth below, the court will deny the petition.

## I.    State Court Factual & Procedural Background

The Superior Court of Pennsylvania adopted the following relevant factual

background from the Post Conviction Relief Act ("PCRA") court while reviewing

Shauf's appeal from a June 23, 2017 order dismissing his PCRA petition:

> On October 22, 2012, a murder occurred at 310 East King Street,
> Chambersburg, Pennsylvania.  Numerous individuals lived in the
> residence and were present at the time of the incident including Juan

Miguel Herrera Marquez, Genaro Gonzalez Chavez, Arturo Rubio Perez, Victor Campos Olguin (Hugo), and Jose Trinidad Sanchez Herrea.  Two other individuals, one named Sergio and another named Ignacio, lived in the residence but were not present on the night in question.  Additionally, another individual, Augustin Macias Marquez, did not live in the residence but was present on the night the murder occurred.

At roughly 9:30 p.m. on that evening, two individuals forced their way into 310 East King Street brandishing firearms.  The first individual, Carl Varner, wielded a .22 Magnum Rohm single action revolver.  The other individual, the Petitioner, displayed a H. Coon .410 snake charmer shotgun.  The two suspects began yelling and demanded to see an individual named "El Gallo."  It is important to note that the six victims present spoke Spanish and almost no English.  Upon observing the two suspects enter the residence Juan bolted into a nearby bedroom and hid in the closet.  Genaro and Augustin, who were also downstairs at the time the suspects entered, were forced upstairs at gunpoint.  They were subsequently separated into different bedrooms.  Genaro was forced into a bedroom in which Arturo was already present.  Petitioner then found Jose in the bathroom preparing to take a shower and placed him in that bedroom as well.  At this point, the Petitioner took money from Arturo at gunpoint and continued to demand to see "El Gallo."  When his demands went unfulfilled, the Petitioner fired a shot into the ceiling and then reloaded his shotgun.

Meanwhile Carl Varner had forced Augustin into the other bedroom in which Hugo was already located.  He then proceeded to rob the two at gunpoint.  Next, Varner led Hugo and Augustin down the hallway before knocking Augustin to the floor.  Varner then placed his .22 caliber revolver by Hugo's neck and fired.  As a result, Hugo stumbled into the bathroom, fell into the bathtub and later died from his injury.  Following the shot, both suspects fled the scene.  Police were then called and an initial investigation was conducted.  Police were able to identify the Petitioner and Carl Varner as suspects and they were later arrested.  Following a properly executed search warrant, both the .22 revolver and .410 snake charmer shotgun were found wrapped in a bandana in Varner's basement.  An empty box of .410 snake charmer shotguns shells were found in the Petitioner's truck.

At trial, Petitioner admitted that he did accompany Varner to 310 East King Street that night.  However, the Petitioner argued that he had no idea that the Petitioner intended to rob and murder anyone.  Instead, the Petitioner claimed he believed they were simply going to the residence to pick up money that was owed to Varner.  Petitioner also

testified that Varner brandished both the .22 revolver and the .410 snake charmer shotgun and that he only brought a stick he found on the ground for protection.  Most importantly, Petitioner testified that at no time did he go upstairs with Varner and that he simply stayed downstairs with his stick.  Petitioner testified that following the shots he fled with Varner and drove home.  Unconvinced, the jury convicted the Petitioner on all counts including Second Degree Murder.

Commonwealth v. Shauf, No. 1160 MDA 2017, 2018 WL 4998263, at *3 (Pa. Super. Ct. Oct. 16, 2018); (Doc. 20-7 at 4-6).

On January 7, 2015, Shauf was sentenced to life in prison in addition to an aggregate term of 42 to 84 years.  (Doc. 20-7 at 2).  Shauf filed a timely post-sentence motion.  (Id.)  On April 13, 2015, the trial court denied the motion and granted Shauf's previous counsel's motion to withdraw.  (Id. at 3).  The court subsequently appointed counsel to represent Shauf on appeal.[1]  (Id.)

On June 11, 2015, Shauf filed a notice of appeal to the Pennsylvania Superior Court.  Commonwealth v. Shauf, No. 1012 MDA 2015 (Pa. Super. Ct. 2015).   On October 30, 2015, counsel filed an application to discontinue the appeal and an application to withdraw as counsel.  Id.  On November 5, 2015, the Superior Court entered an order discontinuing Shauf's appeal and remanding the request to withdraw as counsel to the trial court.  Id.  Shauf did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On February 29, 2016, Shauf filed a *pro se* petition pursuant to the Post Conviction Relief Act, 42 PA. CONS. STAT. §§ 9541-9546.  Shauf, No. CP-28-CR-

---

[1]  During the pretrial process, Shauf was represented by Attorney Mark Bayley.  He was represented by Attorney Shane Kope at trial, and by Attorney Jens Wagner on appeal.

0000007-2013.  Counsel was appointed to represent Shauf and subsequently filed

an amended PCRA petition.  Id.  On November 17, 2016, the PCRA court held an

evidentiary hearing.  Id.  On June 23, 2017, the PCRA court denied the petition.

(Doc. 20-7).  Shauf filed a notice of appeal with the Pennsylvania Superior Court.

Commonwealth v. Shauf, 1160 MDA 2017 (Pa. Super. Ct. 2017).  On October 16,

2018, the Pennsylvania Superior Court affirmed the PCRA court's decision.  Shauf,

No. 1160 MDA 2017, 2018 WL 4998263.  On January 29, 2019, Shauf filed a petition

for allowance of appeal with the Pennsylvania Supreme Court.  Commonwealth

v. Shauf, No. 64 MAL 2019 (Pa. 2019).  On July 10, 2019, the Pennsylvania Supreme

Court denied the petition for allowance of appeal.  Commonwealth v. Shauf, No. 64

MAL 2019, 654 Pa. 532, 216 A.3d 1013 (table) (Pa. 2019).

Shauf filed the instant petition pursuant to 28 U.S.C. § 2254.  (Doc. 1).

**II.    Habeas Claims Presented for Federal Review**

Shauf seeks habeas relief based on the following grounds:

A.    Ground One: Petitioner's Sixth Amendment right to have a trial with an impartial and unbiased jury was violated when the court refused to remove a juror who accused him of a crime and trial counsel was ineffective for failing to request that juror be stricken.

B.    Ground Two: Trial counsel was ineffective for failing to object to the multiple statements made by the District Attorney during closing arguments.

C.    Ground Three: Petitioner received ineffective assistance where counsel failed to: (1) object when the prosecutor improperly characterized the petitioner as being violent, (2) object when the prosecution introduced irrelevant and inadmissible testimony about petitioner's past drug use, and (3) object to the admission of photographs of the homicide victim while he was still living and object to the use of those photos during closing arguments.

D.      Ground Four: The petitioner was denied effective assistance
        when trial counsel failed to object when multiple police
        detectives offered personal opinions as to the truthfulness and
        veracity of the petitioner's statement to police.

E.      Ground Five: Petitioner received ineffective assistance when
        pretrial counsel failed to file a motion to suppress petitioner's
        statement to the police on the basis that he did not make a
        knowing and intelligent waiver of his <u>Miranda</u> rights.

F.      Ground Six: Petitioner received ineffective assistance when
        pretrial counsel failed to file a motion to suppress evidence
        secured from petitioner's home and his vehicle on the basis that:
        (1) there was no nexus between the homicide the police were
        investigating and the places to be searched, and (2) the search
        warrant failed to disclose facts bearing on the unreliability of the
        identification of petitioner.

G.      Ground Seven: PCRA counsel was ineffective for failing to raise
        in the initial collateral review petition that trial counsel was
        ineffective for failing to object to request a mere presence jury
        instruction.

H.      Ground Eight: When petitioner's claims are viewed in toto, he is
        entitled to habeas relief.

(Docs. 2, 22).

## III.    <u>Legal Standards</u>

The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A habeas

corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to

challenge the "fact or duration" of his confinement.  <u>Preiser v. Rodriguez</u>, 411 U.S.

475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62,

67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 68.

## A.   Exhaustion

A federal court cannot grant habeas corpus relief unless the petitioner has exhausted all available state remedies, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded in principles of comity, to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  <u>See Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts."  <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989).  To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."  <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir. 1999); <u>see also</u> <u>Nara v. Frank</u>, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts).  While the petitioner need not cite "book and verse" of the federal Constitution, <u>see</u>

<u>Picard v. Connor</u>, 404 U.S. 270, 278 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, <u>see</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (quoting <u>Picard</u>, 404 U.S. at 275).

### B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is governed by 28 U.S.C. § 2254(d).  Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." <u>Matteo v. Superintendent</u>, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." <u>Id.</u>

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error.  Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of correctness applies to both explicit and implicit findings of fact.  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  See 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction."  Breighner v. Chesney, 301 F. Supp. 2d

354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]).  Mere disagreement

with an inferential leap or credibility judgment of the state court is insufficient to

permit relief.  See Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529

U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001).  Only when

the finding lacks evidentiary support in the state court record or is plainly

controverted by evidence therein should the federal habeas court overturn a state

court's factual determination.  See Porter, 276 F. Supp. 2d at 296; see also Williams,

529 U.S. at 408-09.

### C.      Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective

assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  This

right to effective assistance of counsel also extends to the first appeal.  See Lewis

v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).  In Strickland, the Supreme Court

articulated a two-prong test in assessing whether a petitioner has been denied the

effective assistance of counsel.  See Strickland, 466 U.S. at 687-88.  A petitioner

must demonstrate (1) that his counsel's representation "fell below an objective

standard of reasonableness" and (2) that such defective performance caused the

petitioner prejudice.  See id.

---

[2] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

In evaluating the first prong of the <u>Strickland</u> test, the court must be "highly deferential" toward counsel's conduct.  <u>Id.</u> at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  <u>Id.</u> ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  "<u>Strickland</u> and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." <u>Rolan v. Vaughn</u>, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing <u>Strickland</u>, 446 U.S. at 689).  Notably, courts will not deem counsel ineffective for failing to raise a meritless argument.  <u>Strickland</u>, 466 U.S. at 691; <u>United States v. Saunders</u>, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  <u>See</u> <u>Strickland</u>, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>  Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. <u>See</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the <u>Strickland</u> test.  <u>Carpenter v. Vaughn</u>, 296 F.3d 138, 149

(3d Cir. 2002).  The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one.  <u>Strickland</u>, 466 U.S. at 697.

All of Shauf's ineffective assistance of pretrial and trial counsel claims were addressed by the state courts on the merits and, therefore, are subject to AEDPA review.  Shauf concedes his ineffective assistance of PCRA counsel claim (Ground Seven) is procedurally defaulted.  (Doc. 2 at 33).

IV.   **Discussion**

A.   **Ground One**

Shauf claims that the trial court denied him a fair and impartial jury when it failed to dismiss Juror Number 2, despite the juror's admission that she remembered Shauf because she hired him to fix a roof at her house, and that trial counsel was ineffective for failing to move to dismiss the juror.  (Doc. 2 at 5-10; Doc. 22).

According to the record, on the first day of trial, the court noted that after jury selection, Juror Number 2 realized she recognized Shauf and immediately brought this to the court's attention.  (Doc. 20-1 at 4).  The trial judge and defense counsel questioned Juror Number 2.  (<u>Id.</u> at 4-5).  She indicated that she did not initially recognize Shauf's name, but later remembered she and her husband hired Shauf to fix a roof at her home.  (<u>Id.</u> at 4).  Juror Number 2 gave Shauf the entire payment for the job, but he failed to complete the work.  (<u>Id.</u>)  The trial judge posed the following question to Juror Number 2: "[W]ould you still be able to sit as a fair and impartial juror in this case?"  (<u>Id.</u>, Jury Trial Notes of Transcript ("N.T.") 4:20-

21).  She replied: "I think I would be able to.  That's in the past.  Whether or not what he's accused of he did, I would only make a fair decision after hearing all information."  (<u>Id.</u>, N.T. 4:22-24).  Defense counsel then questioned Juror Number 2 as follows:

> Q. [Attorney Kope]:  What happened to you specifically on your dealings with Mr. Shauf—just to repeat, in a different way the question by the Judge—would that affect your ability to judge his credibility and think, [h]e's just not telling the truth because of what had happened to us?
>
> A. [Juror Number 2]:  I pray I wouldn't.  I don't think I would because I want to be fair.  I just want to listen to the facts from all parties even Mr. Shauf, you know, before I would make a decision.  That's in the past.  I harbor no ill feelings.  At least the work got done.  I feel bad my husband and neighbor man had to finish it because we did contract Mr. Shauf to do it.  And the amount of money was for his labor and all materials and stuff.
>
> Q. [Attorney Kope]:  I understand.  And so when you say you don't think you could, I mean, you believe you could listen to his version and judge him based on what he says and his credibility at the time he says it.  Do you feel you can do that without any bias?
>
> A. [Juror Number 2]:  I feel like I could.  I feel I could.

(<u>Id.</u> at 5-6, N.T. 8:2-20).  Defense counsel did not move to have the juror excused.  Shauf alleges that trial counsel was ineffective by failing to move to dismiss Juror Number 2, thereby denying him a fair and impartial jury.

The PCRA court addressed this issue in its June 23, 2017 opinion[3]:

[T]o establish a meritorious ineffectiveness claim, Petitioner must first establish that [his] claim has arguable merit by showing that "the factual statements are accurate and 'could establish cause for relief.'" [Commonwealth v.] Barnett, 121 A.3d [534][,] 540 [(Pa. 2015)]. Pursuant to Article I, Section 9 of the Pennsylvania Constitution and the 6th Amendment of the United States Constitution, the criminally accused are explicitly granted the right to an impartial jury. "[C]laims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony." Commonwealth v. Ellison, 902 A.2d 419,424 (Pa. 2006). However, disclosure of possible conflicts does not automatically require juror disqualification. As stated by the Pennsylvania Supreme Court "[t]he test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor." Commonwealth v. Koehler, 36 A.3d 121, 143 (Pa. 2012) (internal citations omitted). The decision of whether to excuse a juror is within the discretion of the trial court, and is subject to review only for an abuse of discretion. Id. at 144.

In Koehler, an alternate juror informed the court that she may have previously encountered the defendant approximately one year before the trial. Id. at 143. Upon the Court's inquiry as to the juror's ability to serve fairly, the juror initially indicated that she was uncertain about her ability to serve impartially. Id. However, after additional

---

[3] Shauf's ineffective assistance of pretrial and trial counsel claims were adjudicated on the merits during the PCRA proceedings. "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008)). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" Burnside v. Wenerowicz, 525 F. App'x 135, 138 (3d Cir. 2013). However, when the highest state court that considered the claim does not issue a reasoned opinion, we "look through" that decision to the last reasoned opinion of the state courts, and we apply a rebuttable presumption that the higher court adopted the same reasoning as that set forth by the lower court. See Wilson v. Sellers, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). In the instant matter, the PCRA court opinion will be the primary reference point in addressing Shauf's claims.

questions, the juror concluded this encounter would not affect her ability to be a fair and impartial juror.  Id.

In the case at bar, like the juror in Koehler, Juror Number 2 responded that she believed she would be able to serve impartially.  (See T.P. Trial, day 1, at 4-9).  Consequently, this Court is not persuaded by Petitioner's argument that trial counsel should have requested the juror's excusal, rendering the instant claim of ineffectiveness void of arguable merit.  Petitioner therefore fails the first Pierce prong as to his IAC claim for trial counsel's failure to request Juror Number 2's excusal from trial.

(Doc. 20-7 at 28-31; see also Doc. 20-7 at 68-70).

Under the Sixth and Fourteenth Amendments, a defendant may not be deprived of any liberty without due process of law and, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. See Irvin v. Dowd, 366 U.S. 717, 722 (1961) ("[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.").  The bias of a juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law.  United States v. Wood, 299 U.S. 123, 133 (1936); see also United States v. Mitchell, 690 F.3d 137, 144 (3d Cir. 2012).

The question of actual bias, which is at issue here, is one of fact and best determined by the trial court's own assessment of a juror's impartiality, credibility, and demeanor.  See Patton v. Yount, 467 U.S. 1025, 1038 (1984); Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981).  If a trial court becomes aware of a possible source of juror bias, due process requires the court to "determine the circumstances, the impact therefore upon the juror, and whether or not it was prejudicial."  Remmer v. United States, 347 U.S. 227, 230 (1954).  This requires the trial court to conduct a hearing to determine what transpired, the impact on the

juror, and whether the contact, or cause of the alleged bias, was prejudicial.  Id. at
229; Smith v. Phillips, 455 U.S. 209, 216 (1982).  Significantly, the United States
Constitution does not require a new trial every time a juror has been placed in a
potentially compromising situation because it is virtually impossible to shield jurors
from every contact or influence that might theoretically affect their vote.  Smith, 455
U.S. at 217.

Upon being apprised of the issue of potential actual bias, the trial judge and
defense counsel properly questioned the juror prior to opening statements at trial.
The trial court permitted Juror Number 2 to remain on the jury and noted that
defense counsel did not believe there were grounds for removal.  (Doc. 20-1 at 5,
N.T. 9:10-16).  The PCRA court deferred to the judgment of the trial court, which
determined that Juror Number 2 could remain on the jury but only after a probing
inquiry—with the participation of defense counsel—concerning potential bias.  As
stated by the PCRA court, the trial court reasonably exercised its discretion and
held that the juror's familiarity with Shauf would not affect her ability to act
impartially.  Given the above, it is clear that the manner in which the state court
conducted its review is congruous with, and a proper and reasonable application of,
the clearly established Supreme Court law applicable to actual juror bias.  The trial
court satisfied it obligations under Remmer and Smith.  Shauf is not entitled to
relief on this basis.

The decision also contains a reasonable determination of the facts in light of
the state court evidence.  Based on the colloquy between the trial judge, defense
counsel, and Juror Number 2, there is sufficient support in the record for the state

court's conclusion that Juror Number 2 would be impartial.  Shauf simply has not presented the kind of clear and convincing evidence of bias that is needed to rebut § 2254(e)(1)'s presumption.[4]  Shauf is not entitled to habeas relief on this claim.

Shauf also asserts that trial counsel was ineffective for failing to move to dismiss Juror Number 2.  A petitioner asserting ineffective assistance must identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment.  Strickland, 466 U.S. at 690.  The reviewing court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance."  Id.  It therefore follows that counsel cannot be ineffective for declining to raise a meritless issue.  Premo v. Moore, 562 U.S. 115, 124 (2011).  The Third Circuit has specifically held that the ineffective assistance of counsel test relied upon by the state court in this matter, which includes an assessment of the merits of the underlying claim, is not contrary to the Supreme Court's Strickland standard.  See Werts 228 F.3d at 203-04.[5]  Shauf does not argue otherwise.  It is evident that the state court reviewed the portion of the trial transcript covering the questioning of Juror Number 2 on the issue of bias and concluded that Shauf's claim lacked arguable merit and that trial counsel was not ineffective for failing to request Juror Number 2's excusal from

---

[4]  Under AEDPA, such factual determinations are "presumed to be correct," 28 U.S.C. § 2254(e)(1), and Shauf bears "the burden of rebutting the presumption of correctness by clear and convincing evidence," see Patton, 467 U.S. at 1038; see also Wainwright v. Witt, 469 U.S. 412, 426 (1985).

[5]  Although Pennsylvania courts typically articulate a three-prong test for evaluating ineffective assistance of counsel claims and Strickland sets forth a two-prong test, the legal evaluation is the same.  See Werts, 228 F.3d at 202-03.

trial.  The decision is a reasonable application of the arguable merit prong of

Strickland and constitutes an objectively reasonable determination of the facts in

light of the evidence presented to the state court.  Shauf is not entitled to relief on

this ineffective assistance of counsel claim.

### B.    Ground Two

Shauf next alleges that trial counsel was ineffective for failing to object to the

District Attorney's statements during closing arguments.  (Doc. 2 at 10-13).  The

prosecutor's closing argument included the following statements:

> There's three kinds of people in the world.  In my military experience,
> I've heard a lot of illustrations I think this is useful today.  There's
> three types of people.  First are sheep.  It's about 98 percent of the
> population.
>
> I don't know all of you personally.  I suspect most, if not all of you, are
> sheep.  That's not a pejorative term at all.  It's someone who has a
> prosocial behavior, who lives their lives to benefit others, to stay
> peaceful, mind their own business, do their job, support their friends
> and family, keep their nose clean, don't have much interaction with
> criminals and evil.  Most people, about 98 percent.
>
> There's 1 percent who are wolves.  They prey on the sheep.  That's
> either something that law enforcement has to deal with or the military.
> There's 1 percent out there whose jobs in their minds is to prey on the
> sheep, someone weaker and not prepared to meet the challenge,
> defend themselves.
>
> Thankfully, there's another 1 percent.  Sheepdogs.  The sheepdogs' job
> is to protect the sheep.  They fight the wolf.  They're kind of similar
> sometimes—and they have to be—in the sense the violence the wolf
> brings to the sheep has to be met with violence to meet that, right?
> The difference between the two is right here.  It's integrity, and it's
> morality.
>
> I saw a picture once of a man, a Port Authority officer.  He was
> standing on ground Zero on September 11th, 2001.  He's covered in
> dust.  And he has three civilians around him all covered in dust.  You
> look at his face.  You can't find his face on the Internet.  I was shown

his face in the context of this illustration.  Abject fear.  Not a movie.
It's not an actor.  Look at the fear.  It's abject fear.  He's been up [o]n
the tower one, two, three times already.  Ground Zero, New York.
September 11th.  People he just hustled out of the building.  People
jumping out on fire, smoke everywhere.  He's been up there three
times in the tower.  Back down.  Covered in dust.

That was after his third trip in the building.  He went in a fourth time.
He didn't come out.  He didn't do that because he was tough,
masculine, full of testosterone.  That officer did that out of love, out of
love for the sheep, for the flock, for the morality involved in that.

It is disgusting for these two, both of them, to denigrate this
community's police officers and say they planted evidence so we could
happen to pin a murder on someone.  It's disgusting.

If you want to believe cops planted evidence in this case for some
reason to nail these two for some vendetta they may have for some
reason, acquit them.

(Doc. 25-1 at 31-32, N.T. 118:22-120:18).

The PCRA court noted that Shauf contended that these statements were

improper, and addressed this claim as follows:

    a.   <u>Arguable Merit</u>

As noted above, to establish a meritorious ineffectiveness claim,
Petitioner must first establish that [his] claim has arguable merit by
showing that "the factual statements are accurate and 'could establish
cause for relief.'"  <u>Barnett</u>, 121 A.3d at 540.

Here, Petitioner argues that the Commonwealth "on numerous
occasions referred to the [Petitioner] and his co-defendant in a
derogatory fashion, called the line of argument made by trial counsel
'disgusting' and improperly referred to the September 11, 2001
terrorist attacks."  (Petitioner's PCRA Brief, at 25).  Petitioner submits
that the above actions were improper, rendering trial counsel's
assistance ineffective as a result of his failure to object.  (<u>Id.</u>).

The Pennsylvania Supreme Court has provided, in pertinent part:

    It is well established that a prosecutor must have
    reasonable latitude in presenting a case to the jury, and

must be free to present arguments with "logical force and vigor."  Counsel may comment upon "fair deductions and legitimate inferences from the evidence presented during the testimony."  Although a prosecutor may argue to the jury that the evidence establishes the defendant's guilt, arguments from personal opinion as to the guilt of the accused are not proper.  Moreover, not every remark by the prosecutor, even assuming it is intemperate or uncalled for, requires a new trial.  A prosecutor's comments do not amount to reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict."

Commonwealth v. Chamberlain, 30 A.3d 381, 407-08 (Pa. 2011) (internal citations omitted).  "A prosecutor does not engage in misconduct when his statements are based on the evidence or made with oratorical flair. Additionally, a prosecutor must be permitted to respond to arguments made by the defense."  Carson, 913 A.2d at 237.

Here, Petitioner has failed to persuade this Court that the Commonwealth's closing argument went beyond passionate rhetoric. Rather, the rhetoric relating to September 11th, in the context of the rest of the Commonwealth's closing argument, was a discussion that referred to the significant job police officers undertake when they are on the clock; this was the Commonwealth's response to the Petitioner's trial strategy of insinuating that the police had planted evidence. For the above noted reasons, Petitioner has failed to demonstrate the first Pierce prong.  Accordingly, the instant IAC claim is dismissed.

b.   Reasonable Basis

Even were Petitioner able to demonstrate that the instant claim has arguable merit, Petitioner must also demonstrate the second Pierce prong—that trial counsel had no reasonable basis for his actions or lack thereof at trial.

Here, Petitioner asserts that trial counsel's failure to object to the Commonwealth's closing argument renders trial counsel's assistance ineffective.  (Petitioner's PCRA Brief, at 24-25).  Petitioner further submits that trial counsel had no reasonable basis for failing to object to the Commonwealth's closing argument. (Id.).

19

At the PCRA hearing, Attorney Kope was questioned regarding his failure to object to the above noted statements made by the Commonwealth:

> I feel like the feel the Judge in every trial makes an effort to instruct the jury that their feelings about any particular attorney, that any passionate argument that the attorney makes, it's not the controlling issue.  The controlling issue is their recollection of the facts and their application of the facts.  And so, I as a standard rule do not object to closing arguments or opening arguments.  Man, many attorneys, and good attorneys, and good district attorneys will make passionate arguments, opening and closing and I typically don't object to that. .
> . . .
> Because I do the same thing.
> . . .
> I do not and would not—I did not and would not object to that argument made by Mr. Fogal or any other district attorney in their closings or openings for the reasons I've stated.

(T.P. PCRA Hearing, at 93-95).  As noted above, this Court must exercise great deference when assessing counsel's performance.  Perry, 128 A.3d at 1290.  To accept Petitioner's arguments would be to wholly disregard trial counsel's explanations.

Attorney Kope's testimony at the PCRA hearing indicates to this Court that trial counsel had a reasonable basis for deciding not to object to the respective character testimony.  Accordingly, Petitioner's instant claim for ineffectiveness fails the second Pierce prong.

(Doc. 20-7 at 63-68).

To successfully state a claim for habeas relief based upon comments made by a prosecutor at trial, a petitioner must demonstrate that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)); see also Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (examining a prosecutorial misconduct claim "in light of the record as a

whole" in order to determine whether the conduct "'had [a] substantial and injurious effect or influence'" on the jury's verdict).  A court evaluating the appropriateness of prosecutorial remarks should consider if the remarks misstated or manipulated evidence, and whether they implicated other specific rights of the accused, such as the right to counsel or the right to remain silent.  See Darden, 477 U.S. at 182.  Significantly, the concept of "fair response" allows a party to respond to statements made by opposing counsel.  United States v. Robinson, 485 U.S. 25, 32 (1988).

The state courts' disposition of this claim is not an unreasonable application of Supreme Court precedent.  The PCRA court noted the prosecutor's comments were nothing more than "passionate rhetoric," and the September 11th comment referred to the noteworthy work of police officers and was a fair response to the defense's trial strategy of insinuating the police had planted evidence.  (Doc. 20-7 at 66).  The court examined the propriety of the comments and found Shauf's claim that trial counsel was ineffective for failing to object to the closing argument lacked arguable merit.  Additionally, the PCRA court squarely addressed the issue and made a considered determination that "trial counsel had a reasonable basis for deciding not to object to the respective character testimony."  (Doc. 20-7 at 66-68). The state court reached a reasonable conclusion in light of the evidence of record. Habeas relief is not warranted.

**C.    Ground Three**

In ground three, Shauf alleges that he received ineffective assistance of counsel when trial counsel failed to (1) object when the prosecutor improperly

characterized Shauf as being violent; (2) object when the prosecution introduced

irrelevant and inadmissible testimony about Shauf's past drug use; and (3) object to

the admission of photographs of the homicide victim while he was still living and

object to the use of those photos during closing arguments.  (Doc. 2 at 13-24).

### 1.   *Failure to Object to Improper Character Testimony Describing Shauf as Violent*

At trial, the Commonwealth called Erica Beard, Shauf's former girlfriend, as

a witness.  (Doc. 2 at 13-19).  On cross-examination by defense counsel, Ms. Beard

provided the following testimony:

> Q. [Attorney Kope]: Now, also during this second interview with
> Detective Mummert, do you believe or do you remember-excuse me-
> telling the detective that you've never seen Jason with guns or known
> him to have guns?
>
> A. [Ms. Beard]: No. I've not known or seen him with a gun ever.
>
> . . .
>
> Q. [Attorney Kope]: Now, also during that same conversation, you had
> told the detectives that you would never expect Jason to shoot anyone;
> is that correct?
>
> A. [Ms. Beard]: That is correct.

(Doc. 20-3 at 9, N.T. 26:25-27:4; 27:12-15).

During redirect, the Commonwealth asked Ms. Beard the following

questions:

> Q. [Commonwealth]: Did you know [Petitioner] to be violent?
>
> A. [Ms. Beard]: I mean, we had physical altercations when we were in a
> relationship.
>
> Q. [Commonwealth]: Did you ever know him to get into fights with
> other people?

A. [Ms. Beard]: Yes.

(Doc. 20-3 at 11; N.T. 34:14-19).  Defense counsel did not object to this line of

questioning.  Upon review of this claim, the PCRA found the following:

a.   <u>Arguable Merit</u>

. . .

Under the Pennsylvania Rules of Evidence, "[e]vidence of a person's
character or character trait is not admissible to prove that on a
particular occasion the person acted in accordance with the character
or trait."  PA.R.E. 404(a). Moreover, "[e]vidence of a crime, wrong, or
other act is not admissible to prove a person's character in order to
show that on a particular occasion the person acted in accordance with
the character."  PA.R.E. 404(b)(2).  "This rule of evidence encompasses
the principle that, "Generally, evidence of prior bad acts or unrelated
criminal activity is inadmissible to show that a defendant acted in
conformity with those past acts or to show criminal propensity."  <u>See</u>
<u>Commonwealth v. Nypaver</u>, 69 A.3d 708, 716 (Pa. Super. 2013) (quoting
<u>Commonwealth v. Ross</u>, 57 A.3d 85, 98 (Pa. Super. 2012) (quoting
<u>Commonwealth v. Sherwood</u>, 603 Pa. 92, 982 A.2d 483 (2009))).
However, a litigant may "open the door" to such inadmissible
evidence; "[a] litigant opens the door to inadmissible evidence by
presenting proof that creates a false impression refuted by the
otherwise prohibited evidence."  <u>See</u> <u>Nypaver</u>, 69 A.3d at 716.

Here, through his questions regarding whether Ms. Beard had seen
the Defendant with guns or known the Defendant to own guns,
Attorney Kope opened the door to the line of questioning pursued by
the Commonwealth on redirect, as these questions related to the
Defendant's character or trait for violence.  Consequently, Attorney
Kope was not ineffective for failing to thereafter object to the
Commonwealth's questions.  Petitioner therefore fails the first <u>Pierce</u>
prong as to his IAC claim for trial counsel's failure to object to
character testimony describing Petitioner as violent.

b.   <u>Reasonable Basis</u>

Even were this Court to find arguable merit in this particular
ineffectiveness claim, the claim fails the second <u>Pierce</u> prong of
reasonable basis.  As set forth previously, the decisions made by trial
counsel will be deemed "reasonable if they effectuated his client's
interests."  <u>Barnett</u>, 121 A.3d at 540 (quoting <u>Stewart</u>, 84 A.3d at 707).

During the PCRA hearing, Attorney Kope indicated that:

> [P]art of our trial strategy with Mr. Shauf was that he was
> known—and I believe in one of the officers had said this
> to him, but he was known to use his fist in altercation, not
> weapons and he's not known to have guns and things of
> that nature . . . . that if he ever got into fight, he never
> used a weapon.  That was the theory.

(T.P. PCRA Hearing, at 74).  Moreover, this Court must exercise great
deference when assessing counsel's performance.  Perry, 128 A.3d at
1290.  To accept Petitioner's arguments would be to wholly disregard
trial counsel's explanations.

Attorney Kope's testimony at the PCRA hearing indicates to this Court
that trial counsel had a reasonable basis for deciding not to object to
the respective character testimony.  Accordingly, Petitioner's instant
claim for ineffectiveness fails the second Pierce prong.

(Doc. 20-7 at 31-34).

The PCRA court found that defense counsel's questions to Ms. Beard opened

the door to the line of questioning pursued by the Commonwealth on redirect, and

thus the questioned evidence was admissible character evidence.  Likewise, the

Superior Court unequivocally affirmed the PCRA court's conclusion that "through

trial counsel's questioning of Appellant's former girlfriend on cross-examination

about whether she knew Appellant to have guns, defense counsel opened [the] door

for [the] Commonwealth to pursue on re-direct questions related to Appellant's

character/propensity for violence."  Shauf, 2018 WL 4998263, at *2.  An attorney

cannot render ineffective assistance by failing to object to admissible evidence.  The

state courts ruled that the testimony was admissible under state law and that trial

counsel was not ineffective for failing to object.  The state courts reasonably applied

the Strickland standard in finding that the underlying claim lacked arguable merit.

24

Additionally, the state courts found that trial counsel "had a reasonable basis for deciding not to object to the respective character testimony." (Doc. 20-7 at 34). Part of the defense strategy was to show that Shauf never used weapons in an altercation, and Ms. Beard's testimony on cross-examination bolstered this theory. The state courts afforded great deference to counsel's strategic choices. We find that this is an objectively reasonable application of <u>Strickland</u>. <u>See, e.g.</u>, <u>Buehl v. Vaughn</u>, 166 F.3d 163, 169 (3d Cir. 1999) ("Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, we have cautioned that it is 'only the rare claim of ineffectiveness that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance. . . .'") (internal citation omitted). It is also a reasonable determination of the facts given the evidence of record. We will deny habeas relief as to this claim.

### 2. *Failure to Object When the Prosecution Introduced Irrelevant and Inadmissible Testimony about Shauf's Past Drug Use*

Shauf next asserts that trial counsel was ineffective for failing to object to irrelevant and inadmissible testimony about his past drug use. (Doc. 2 at 19-21).

The PCRA court found as follows:

a.    <u>Arguable Merit</u>

. . .

Here, Petitioner asserts that at trial, testimony concerning Petitioner's previous use of illegal drugs was presented to the jury numerous times. (Petitioner's PCRA Brief, at 18-19). Petitioner specifically argues:

> [T]estimony regarding past drug use is not admissible "unless the party offering such evidence can specifically tie it to the charged conduct." <u>Commonwealth</u>

> v. Chapman, 763 A.2d 895 (Pa. Super. 2000).  It is
> inadmissible because it has a prejudicial effect of creating
> an image in the minds of jurors that Petitioner is a "bad
> person."  Id.

(Petitioner's PCRA Brief, at 19).  When offering the above rationale in
Commonwealth v. Chapman, the Superior Court of Pennsylvania
quotes the lower court's opinion which cites to Rule 404 of the
Pennsylvania Rules of Evidence, relating to character evidence and
crimes or other acts.  Chapman, 763 A.2d at 902.

The Pennsylvania Supreme Court has also weighed in on PA. R.E.
Rule 404:

> While evidence of prior bad acts is inadmissible to prove
> the character of a person in order to show conduct in
> conformity therewith, evidence of prior bad acts may be
> admissible when offered to prove some other relevant
> fact, such as motive, opportunity, intent, preparation,
> plan, knowledge, identity, and absence of mistake or
> accident.

Commonwealth v. Busanet, 54 A.3d 35, 60 (Pa. 2012) (citing PA. R.E.
Rule 404(b)(2)).

Given applicable case law, this Court is persuaded that trial counsel
could have objected to the testimony, as it is not clear how the
testimony was tied specifically to the murder in the instant case.
Accordingly, Petitioner has established the instant claim has arguable
merit.

b.      Reasonable Basis

Having concluded the instant claim has arguable merit, Petitioner
must also demonstrate the second Pierce prong—that trial counsel had
no reasonable basis for his actions or lack thereof at trial.  Petitioner
avers that trial counsel has no reasonable basis for failing to object to
trial testimony concerning Petitioner's illegal drug use.  (Petitioner's
PCRA Brief, at 18-19).

At the PCRA Hearing, Attorney Kope gave the following answers the
questions concerning his failure to object to the testimony concerning
Petitioner's previous use of illegal drugs:

[Q]. Other things that you didn't raise objections to, such
as drug use by Mr. Shauf?

[A]. Yes.  I think one of the witnesses had said that she—
against, I don't remember exactly.  I think she said she
had thought she had seen—I don't know if it was Carl or
Jason using drugs or cocaine that evening or it if was a
previous occasion.  Again, I didn't find that significant
enough at the time because our whole trial strategy,
because he was drinking with Carl Varner before they
went over there.  And, I think Carl Varner may have at
one point said they were using drugs.  Again, it wasn't
significant enough to me to raise an objection to.

[Q]. So, you didn't think the—let's put it this way.  If you
had objected to the fact that he had previously used
drugs, do you think that was objectionable?  In other
words, if you had raised an objection that it would have
been a sound objection that the Court would have
considered?

[A]. I really don't know.  I mean, is it something you could
ultimately object on?  You can object on anything that
you feel is—I mean, we've all been in trials where you
have an attorney that objects to every little thing that
comes up.  I tend to, if it's not significant or if I felt its
harmless to our strategy, I won't object to it.

. . .

Not everybody can foresee every little thing that a witness
may say and just I tend not to object to every little thing,
draw all the more attention to the issue.  And quite
frankl[y], you know, it breaks up the course of the case to
standup and object to every, you know, thing that could
be objectionable.  So, quite often, if it doesn't effect [sic]
our overall strategy of the case or what we are trying to
accomplish, I will often not object to things that I feel are
just not significant enough to warrant it.

(T.P. PCRA Hearing, at 76-78).

While this Court may agree that it would have been proper for trial
counsel to object to the testimony concerning Petitioner's illegal drug
use, this Court must exercise great deference when assessing counsel's

performance.  Perry, 128 A.3d at 1290.  To accept Petitioner's arguments would be to wholly disregard trial counsel's explanations.

Consequently, Petitioner has failed to persuade this Court that there existed no reasonable basis for trial counsel's failure to object to the testimony concerning Petitioner's illegal drug use.  Accordingly, the instant claim is dismissed for failure to meet the second Pierce prong.

(Doc. 20-7 at 37-40).

The state courts found that Shauf's trial counsel had a tactical reason for not objecting to the testimony regarding his past drug use.  Shauf's trial counsel testified at the PCRA hearing that, in his opinion, the questions about past drug use did not harm the defense trial strategy, it was not significant enough to warrant objection, and he did not want to highlight and draw attention to the evidence. Under the first prong of the Strickland analysis, there is a strong presumption that counsel's conduct falls within the wide range of "reasonable professional assistance."  Strickland, 466 U.S. at 689.  And "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  The Court is required to not only give the attorney "the benefit of the doubt, . . . but to affirmatively entertain the range of possible 'reasons . . . counsel may have had for proceeding as they did.'"  Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (citations omitted).  The decision not to object to prior bad acts evidence may be reasonable in certain circumstances.  See Buehl, 166 F.3d at 169.  The state courts reasonably concluded that trial counsel had a rational, strategic basis for not objecting to the testimony concerning Shauf's past drug use.  He therefore fails on

the first prong of the <u>Strickland</u> analysis.  Habeas relief is not warranted on this claim.

### 3.   *Failure to Object to the Admission and Use of Photographs*

Shauf contends that trial counsel was ineffective as a result of his failure to object to the admission of photographs of the homicide victim while he was still living and to object to the use of those photographs during the Commonwealth's closing argument.  (Doc. 2 at 21-24).  At trial, the Commonwealth introduced photographs of the victim while he was still living.  Trial counsel did not object to the admission of these photographs.  The photos were displayed during the testimony of one of the victim's friends and during the Commonwealth's closing.

In denying this claim, the PCRA court reasoned as follows:

a.   <u>Arguable Merit</u>
. . .

Here, Petitioner avers that the introduction of the photographs of the victim was improper, as the victim's character and physical abilities were not at issue, thereby rendering trial counsel's assistance ineffective due to his failure to object to the photographs' introduction at trial.  (Petitioner's PCRA Brief, at 19-21).

It is well settled that the "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion."  <u>Commonwealth v. Tyson</u>, 119 A.3d 353, 257 (Pa. Super. 2015) (internal citations omitted).  Moreover, "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record."  <u>Id.</u> (internal citations omitted).  "The trial court will not be found to have abused that discretion unless the essential evidentiary value of the photograph is clearly outweighed by the inflammatory effect the picture will have upon the minds and passions of the jurors."  <u>Commonwealth v. Rivers</u>, 644 A.2d 710, 716 (Pa. 1994).

During the guilt phase of a murder trial, certain "life-in-being testimony" is admissible, to show that the victim was alive prior to the murder. Commonwealth v. Jordan, 65 A.3d 318,333 (Pa. 2013). However, the Pennsylvania Supreme "Court has made clear, however, that the manner of presenting life-in-being evidence is subject to some restraints." Id. (citing Rivers, 644 A.2d at 716). In Commonwealth v. Rivers, the Pennsylvania Supreme Court provided that while photographs of the victim may be admissible when the "victim's character and physical abilities are called into question", that photographs "introduced for the purpose of engendering sympathy for the victim with the intent of creating an atmosphere of prejudice against the defendant . . . is error." Rivers, 644 A.2d at 716.

As the victim's character and physical abilities were not at issue, this Court finds Petitioner has demonstrated the instant claim's arguable merit.

b.    Actual Prejudice

. . .

While this Court may agree with Petitioner that the instant claim has arguable merit, Petitioner must also demonstrate actual prejudice resulted from counsel's inadequate performance. See Pierce, 786 A.2d at 213. A petitioner demonstrates prejudice where he proves that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Commonwealth v. Spotz, 84A.3d 294,315 (Pa. 2014) (quoting Commonwealth v. King, 57 A.3d 607, 613 (Pa. 2012)). "To properly determine whether prejudice resulted from the quality of counsel's representation, we must focus on counsel's overall trial strategy and view his performance as a whole." Hull, 982 A.2d at 1026 (quoting Weiss, 606 A.2d at 443). The Pennsylvania Supreme Court has further explained the difference:

> This standard is different from the harmless error
> analysis that is typically applied when determining
> whether the trial court erred in taking or failing to take
> certain action. The harmless error standard, as set forth
> by this Court in Commonwealth v. Story, states that
> "[w]henever there is a 'reasonable possibility' that an
> error 'might have contributed to the conviction,' the error
> is not harmless." This standard, which places the burden
> on the Commonwealth to show that the error did not
> contribute to the verdict beyond a reasonable doubt, is a

> lesser standard than the Pierce prejudice standard, which
> requires the defendant to show that counsel's conduct
> had an actual adverse effect on the outcome of the
> proceedings.  This distinction appropriately arises from
> the difference between a direct attack on error occurring
> at trial and a collateral attack on the stewardship of
> counsel.  In a collateral attack, we first presume that
> counsel is effective, and that not every error by counsel
> can or will result in a constitutional violation of a
> defendant's Sixth Amendment right to counsel.

Spotz, 84 A.3d at 315 (quoting Gribble, 863 A.2d at 472) (internal
citations omitted).

In this instance, Petitioner cites Rivers for its reference to the
"atmosphere or prejudice" that may be created by photographs of the
victim while still alive.  (Petitioner's PCRA Brief, at 20-21).  However,
after finding that admission of the photograph of the decedent prior to
death was improper, the Rivers Court then considered whether the
error was harmless:

> An error is harmless when the Commonwealth can
> establish "that the evidence of guilt was so overwhelming,
> and the error . . . so insignificant by comparison, that the
> error was harmless beyond a reasonable doubt."  Story,
> 476 Pa. at 417, 383 A.2d at 169.  In Story, the
> Commonwealth had introduced two photographs of the
> victim, one of which depicted him with his wife and their
> crippled daughter.  The widow was called as a witness to
> identify the photographs and she went on at great length
> to describe for the jury how the victim's death had
> devastated the lives of her and her daughter.

> In the instant case the photograph was identified by the
> decedent's daughter, who merely related when and where
> the photograph was taken and verified that it was an
> accurate depiction of her mother immediately prior to her
> death.  The testimony surrounding the photograph in this
> case was limited.  Further, the actual polaroid snapshot of
> the victim does not portray her as particularly old or frail .
> . . .  Although admission of the photograph was clearly
> improper and irrelevant, in light of the overwhelming
> circumstantial evidence of the appellant's guilt, we
> conclude that the error was harmless.

> Id. [a]t 716.  Like Rivers, this Court finds that notwithstanding the photographs in question, the Commonwealth presented substantial evidence establishing Petitioner's guilt.  (See generally Commonwealth v. Shauf, Opinion and Order, April 13, 2015 (denying Petitioner's Post-Sentence Motion that alleged the jury verdict was against the weight of the evidence)).  Moreover, given the result reached in Rivers—that admitting photographs of the victims while alive was merely harmless error—in tandem with the higher burden imposed on a petitioner in demonstrating actual prejudice, Petitioner fails to persuade this Court that introduction of photographs of the victim while alive in the instant case actually prejudiced Petitioner.
>
> For the above noted reasons, Petitioner has failed to meet the third Pierce prong.  Accordingly, the instant claim is dismissed.

(Doc. 20-7 at 40-45).

The state courts rejected this ineffective assistance of counsel claim and found that while this claim had arguable merit, Shauf failed to demonstrate actual prejudice as a result of counsel's performance.  To reiterate, when considering the prejudice prong of Strickland, a court must evaluate the effect of counsel's inadequate performance in light of the totality of evidence.  We do not inquire as to whether we "believe[ ] the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold."  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citations and internal quotation marks omitted).  Under this demanding standard, Shauf fails to show that the state courts' decisions were an unreasonable application of Strickland or that they were an unreasonable application of the facts in light of the evidence presented.  In evaluating prejudice, the state courts considered the totality of the available evidence and found that the Commonwealth presented substantial evidence establishing Shauf's guilt, and that Shauf could not

show actual prejudice from trial counsel's failure to object to pictures of the victim while alive. Because the state courts' conclusion was a consistent with, and a reasonable application of, <u>Strickland</u>, this claim will be denied.

### D.    Ground Four

Shauf alleges that trial counsel was ineffective for failing to object when detectives Mummert and Baker offered a personal opinion as to the truthfulness and veracity of his statement to police. (Doc. 2 at 25-26).

At trial, detective Mummert testified as follows:

Q. [Commonwealth]: During the interview, was he asked whether he had been at 310 East King Street the evening prior?

A. [Detective Mummert]: Yes, he was.

Q. [Commonwealth]: What was his response?

A. [Detective Mummert]: Initial[l]y, he denied any information or knowledge of any involvement or of an incident at 310 East King Street.

Q. [Commonwealth]: Was that immediate?

A. [Detective Mummert]: From the very beginning of the interview, correct.

Q. [Commonwealth]: During the course of the interview, was he generally forthcoming?

A. [Detective Mummert]: After about 10 or 15 minutes once he was advised of the severity of the incident and what we were dealing with, he started to disclose some information.

Q. [Commonwealth]: In general, can you generally describe his demeanor and behavior during the interview?

A. [Detective Mummert]: Excited, somewhat deceptive at the beginning and throughout. And as detectives would ask him things, he

started to come up with ways to explain what it was t[h]at we were interpreting from the evidence we had seen to that point.

. . .

Q. [Attorney Kope]: Now, your response to one of the questions asked by [the Commonwealth] is that you in your opinion, Mr. Shauf did not appear shocked at the news of Hugo's death. Did I understand that correctly?

A. [Detective Mummert]: In my opinion?

Q. [Attorney Kope]: Yes.

A. [Detective Mummert]: He feigned being shocked, acted.

(Doc. 20-3 at 21, N.T. 72:6-24; Doc. 20-3 at 42, N.T. 159:14-20).

Detective Baker testified at trial as follows:

Q. [Commonwealth]: As I said, we had an opportunity to watch the interview [with Petitioner] yesterday. It appears you were frustrated at the time. What was the source of your frustration?

A. [Detective Baker]: I don't believe he was telling us the truth when asked questions.

Q. [Commonwealth]: Okay. Did it appear to you at that time as he was presented with more physical evidence that he had that he became a bit more forthcoming?

A. [Detective Baker]: Yes.

. . .

Q. [Attorney Kope]: Would you categorize it that he became more truthful once he realized the extent of the investigation or extent of what happened during the investigation?

A. [Detective Baker]: I believe he changed his story some. I don't know if it was totally truthful.

Q. [Attorney Kope]. If Mummert, Detective Mummert had categorized Jason as becoming more truthful after he learned the extent of what happened, would you disagree with that?

A. [Detective Baker]: No. I would say he became more truthful than what he was initially.

. . .

Q. [Commonwealth]: Attorney Kope asked you about what you thought about the truthfulness of what Jason Shauf told you. He said he never went upstairs. Do you recall that?

A. [Detective Baker]: Yes.

Q. [Commonwealth]: Based upon the physical evidence and witness statements, did you believe that was truthful?

A. [Detective Baker]: No, I did not.

Q. [Commonwealth]: He said he heard a bang.  Back up when he was first advised that someone had died, describe his reaction to that.

A. [Detective Baker]: He animatedly said, Oh, my gosh.

Q. [Commonwealth]: Did you believe that was a truthful reaction?

A. [Detective Baker]: Didn't come across that way to me.

Q. [Commonwealth]: How did it come across to you?

A. [Detective Baker]: Staged or acted.

(Doc. 20-4 at 13, N.T. 42:25-43:8; Doc. 20-4 at 15, N.T. 51:14-23; Doc. 20-4 at, N.T. 54:4-17).

The PCRA court addressed Shauf's ineffective assistance of counsel claim with respect to the detectives' testimony as follows:

a.   Arguable Merit

. . .

Here, Petitioner avers that trial counsel was ineffective as a result of his failure to object to testimony offering a personal opinion as to the truthfulness and veracity of Petitioner's statement.  (Petitioner's PCRA Brief, at 22).

"Under Pennsylvania law, only evidence of a general reputation for truthfulness in the community is admissible as character testimony." Commonwealth v. Smith, 567 A.2d 1080, 1082 (Pa. Super. 1989). "Determinations of credibility, however, are exclusively the province of the jury."  Commonwealth v. Gallagher, 547 A.2d 355, 357 (Pa. 1988).

Petitioner cites both Smith and Gallagher, aver[r]ing:

> Opinion evidence with regard to the credibility of witnesses and statements is prohibited under Pennsylvania law.  Credibility is a matter left solely to the finder of fact.  Impermissible opinion testimony regarding credibility infringes on [sic] duty of the finder of fact to determine credibility and weigh the evidence.

(Petitioner's PCRA Brief, at 23 (internal citations omitted)).

Given the above noted testimony from both Detective Mummert and Detective Baker, the Court is persuaded that both Detectives offered testimony pertaining to the Petitioner's truthfulness.  Accordingly, Petitioner has established the instant claim's arguable merit, satisfying the first Pierce prong.

b.     Actual Prejudice

To succeed on an IAC claim, a petitioner must demonstrate that he suffered actual prejudice as a result of counsel's questioned behavior.  As noted previously, to show actual prejudice, a Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Spotz, 84 A.3d at 315 (internal citations omitted).

Petitioner first cites Gallagher, for the proposition that testimony concerning the credibility of witnesses infringes on the duty of the jury to determine credibility and weigh the evidence.  (Petitioner's PCRA Brief, at 23).  Petitioner also cites Smith, aver[r]ing that "Pennsylvania appellate courts in the past have found that the failure to object to improper testimony renders trial counsel ineffective and is prejudicial to the accused because it invades the jury's 'sacred domain.'" (Petitioner's PCRA Brief, at 23).

However, while it is true that in both cases cited by Petitioner the Pennsylvania appellate courts determined the defendant was prejudiced by the questioned testimony, neither case created a per se

rule of prejudice when such testimony occurs.  Moreover, the instant case is factually distinguished from both <u>Smith</u> and <u>Gallagher</u>, where the challenged testimony was elicited from expert witnesses whose testimony was offered purely for the purpose of rendering an opinion as to truthfulness.  <u>See</u> <u>Smith</u>, 567 A.2d at 1083 (providing that the expert witness' testimony concerning the child's character for telling the truth usurped the credibility determining function of the jury, and finding it improper for "an expert witness, or any witness for that matter, takes the witness stand and under the guise of 'rehabilitation' proceeds to testify as to the credibility of the child/witness.");  <u>Gallagher</u>, 547 A.2d at 356 (finding that an expert witness' testimony regarding the victim's affliction with 'rape trauma syndrome' was inadmissible, and reasoning that "the only purpose of the expert testimony was to *enhance the credibility* of the victim.") (emphasis in original).  In contrast, the testimony of the detectives in the instant case focused on the investigative process; the testimony concerning truthfulness consisted of fleeting statements in the context of an eight (8) day trial.  Therefore, Petitioner has failed to persuade this Court that it should deviate from the <u>Pierce</u> actual prejudice framework applied to IAC claims.

Furthermore, Petitioner has failed to articulate how he was actually prejudiced by the testimony in question.  As noted above, "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective."  <u>Commonwealth v. Chmiel</u>, 30 A.3d 1111, 1128 (Pa. 2011) (quoting <u>Commonwealth v. Paddy</u>, 15 A.3d 431,443 (Pa. 2011)).  The factual disparity between the instant case and the two cases cited by Petitioner, in tandem with Petitioner's failure to demonstrate actual prejudice, leaves this Court to find that Petitioner has failed to meet the third <u>Pierce</u> prong.  Accordingly, the instant IAC claim is dismissed.

(Doc. 20-7 at 55-58) (footnote omitted).

We disagree with the PCRA court's characterization of the detectives'

credibility testimony as "fleeting" and would describe their testimony differently.

Nonetheless, we cannot conclude that the PCRA court's characterization is an

unreasonable factual determination in light of the evidence before the state court.

<u>See</u> 28 U.S.C. § 2254(d)(2).  Nor can we say that the PCRA court's prejudice analysis

was an unreasonable application of <u>Strickland</u>.  The PCRA court concluded that, although the claim had arguable merit, Shauf had failed to demonstrate how he was actually prejudiced by the testimony in question.  (<u>See</u> Doc. 20-7 at 57-58).  The court correctly noted there is no *per se* rule of prejudice from admission of lay witness credibility testimony.  (<u>See</u> <u>id.</u> at 57); <u>cf.</u> <u>Commonwealth v. Dula</u>, 262 A.3d 609, 635 (Pa. Super. Ct. 2021) (on direct appeal, rejecting reading of <u>Commonwealth v. McClure</u>, 144 A.3d 970 (Pa. Super. Ct. 2016), that would establish *per se* rule as "too expansive"); <u>Palmer v. Hendricks</u>, 592 F.3d 386, 398 (3d Cir. 2010) (noting that <u>Strickland</u> established only two categories in which prejudice may be presumed, neither applicable here, and otherwise requires petitioners to "affirmatively prove prejudice" (quoting <u>Strickland</u>, 466 U.S. at 693)).  Finding no *per se* rule, the court appropriately looked to Shauf to explain how he was actually prejudiced.  (<u>See</u> Doc. 20-7 at 58).  The court determined, again accurately, that Shauf could not rely on a bald assertion of prejudice, without proving *how* he was prejudiced, to meet his burden.  (<u>See</u> <u>id.</u> at 58 (quoting <u>Commonwealth v. Chmiel</u>, 30 A.3d 1111, 1128 (Pa. 2011))); <u>see also</u> <u>Strickland</u>, 466 U.S. at 693.  This is a reasonable application of the <u>Strickland</u> prejudice prong, especially given the PCRA court's finding elsewhere that the record contained "substantial" evidence of Shauf's guilt.  (<u>See</u> <u>id.</u> at 45; <u>see also</u> *supra* at 32-33.  Shauf is not entitled to relief on this ineffective assistance claim.

### E.    Ground Five

In ground five, Shauf asserts that pretrial counsel was ineffective for failing to file a motion to suppress his statement to the police on the basis that he did not

make a knowing and intelligent waiver of his <u>Miranda</u>[6] rights.  (Doc. 2 at 26-30).

Shauf alleges that he did not have "any awareness" as to why he was questioned by

police and was not properly informed as to the nature of the investigation.  (<u>Id.</u> at

27).  Thus, he argues that trial counsel was ineffective by not moving to suppress his

statement.

      The PCRA court denied this claim and reasoned as follows:

      a.     <u>Arguable Merit</u>

. . .

In the suppression realm, the Pennsylvania Supreme Court has
provided: "[t]he failure to file a suppression motion may be evidence of
ineffective assistance of counsel.  However, if the grounds
underpinning the suppression motion or objection are without merit,
counsel will not be deemed to have been ineffective in failing to so
move or object."  <u>Commonwealth v. Ransome</u>, 402 A.2d 1279, 1281-82
(Pa. 1979).

Petitioner avers that this claim could establish cause for relief through
his argument that he did not make a knowing and intelligent waiver of
his <u>Miranda</u> rights. (Petitioner's PCRA Brief, at 7).  Accordingly, the
question of whether the instant claim has arguable merit rests on a
determination of whether or not Petitioner's <u>Miranda</u> waiver was
knowing and intelligent.

A <u>Miranda</u> waiver is only valid if it is done in a knowing and intelligent
fashion.  <u>Commonwealth v. Dixon</u>, 379 An2d 553, 556 (Pa. 1977).  The
Pennsylvania Supreme Court has provided that a <u>Miranda</u> waiver is
not "knowing and intelligent" unless the suspect has an awareness of
the "general nature of the transaction giving rise to the investigation."
<u>Id.</u>

At the PCRA hearing, Attorney Bayley was questioned regarding the
applicability of <u>Commonwealth v. Dixon</u> on the Defendant's case.  (T.P.
PCRA Hearing, November 17, 2016, at 13)  He indicated that while he
was not aware of the <u>Dixon</u> case prior to the instant case, that when he
did become aware of its holding "[he] realized that there was an issue

---

     6  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

with regard to suppression and Mr. Shauf's statement that that had potential merit"; he also indicated that he "thought long and hard about whether or not a favorable suppression ruling would advance Mr. Shauf's cause." (Id.). Through this testimony, it appears that Attorney Bayley, and the Commonwealth in its Brief in Opposition to Defendant's Post Conviction Relief Act Petition by citing this testimony, concede that there were grounds upon which a suppression motion could have been made. Therefore, this Court finds that "the grounds underpinning the suppression motion" have merit. See Ransome, 402 A.2d at 1281-82. Petitioner therefore satisfies the first Pierce prong by demonstrating that this claim could establish cause for relief. See Barnett, 121 A.3d at 540.

b.      Reasonable Basis

While Petitioner's instant claim that counsel's failure to file a suppression motion constituted ineffective assistance of counsel has arguable merit, Petitioner's claim fails as trial counsel had a reasonable basis for his failure to file the motion. To succeed on an IAC claim, the Petitioner must demonstrate that counsel did not have any reasonable basis for their acts or failure to act designed to effectuate the client's interest. See Pierce, 786 A.2d at 213. "In considering whether counsel acted reasonably, we look to 'whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success.'" Barnett, 121 A.3d at 540 (quoting Stewart, 84 A.3d at 707). "[J]udicial scrutiny of counsel's performance must be highly deferential", Commonwealth v. Perry, 128 A. 3d 1285, 1290 (Pa. Super. 2015), and "[c]ounsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." Barnett, 121 A.3d at 540 (quoting Stewart, 84 A.3d at 707).

At the PCRA hearing, Attorney Bayley testified as to his rationale for ultimately deciding not to file a suppression motion. Attorney Bayley explained that while he did consider filing a motion to suppress based on inadequate Miranda warnings, he ultimately determined that the good in the statement outweighed the bad. (T.P. PCRA Hearing, at 13). Attorney Bayley further stated that by not challenging the Petitioner's statement, if the Petitioner decided not to testify at trial, the jury would still hear what the Petitioner claimed to be a truthful and accurate version of events that occurred on the night of the crime. (Id. at 14-15). Attorney Bayley also explained that he considered the admission of the Petitioner's statement to be rendered less important than it otherwise might be, because he believed that the

40

Commonwealth would be able to place the Petitioner at the scene of the crime "without any problem". (Id. at 15). Finally, Attorney Bayley testified that another beneficial aspect of Petitioner's statement was that:

> It showed cooperation as well. There could be an argument made from a defense standpoint that people who cooperate and give statements are potentially more likely to be innocent, that would not be an uncommon theory to propose in some form to a jury.

(Id. at 18).

As noted above, this Court must exercise great deference when assessing counsel's performance. Perry, 128 A.3d at 1290. Attorney Bayley's testimony at the PCRA hearing indicates to this Court that trial counsel had a reasonable basis for deciding not to file a suppression motion. Accordingly, Petitioner's instant claim for ineffectiveness fails the second Pierce prong.

(Doc. 20-7 at 12-16).

The PCRA court's foregoing analysis comports with Strickland's

proclamation that

> [b]ecause of the difficulties inherent in [evaluating an ineffective assistance of counsel claim], a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689. Here, the PCRA court concluded that, while Shauf's

underlying claim had arguable merit, pretrial counsel "had a reasonable basis for

deciding not to file a suppression motion." (Doc. 20-7 at 16). Specifically, pretrial

counsel testified that by not challenging Shauf's statement to the police, the jury

would still hear his version of the events if he chose not to testify at trial, he believed

the Commonwealth could easily place Shauf at the scene of the crime, and it

showed cooperation, which could encourage a finding of innocence.  The PCRA court's adjudication of Shauf's ineffective assistance of counsel claim regarding his pretrial counsel's failure to file a motion to suppress is consistent with, and a reasonable application of, <u>Strickland</u>.  We will deny this ineffective assistance of counsel claim.

## F.    Ground Six

Shauf alleges that pretrial counsel was ineffective for failing to file a motion to suppress evidence secured from Shauf's home and his vehicle on the basis that (1) there was no nexus between the homicide the police were investigating and the places to be searched, and (2) the search warrant failed to disclose facts bearing on the unreliability of the identification of Shauf.  (Doc. 2 at 30-32).

The PCRA court addressed these claims as follows:

Under both the Federal Constitution and Pennsylvania Constitution, a totality of the circumstances analysis is required to determine whether probable cause exists for the issuance of a search warrant.  <u>See</u> U.S. Const. Amend. IV; Pa. Const. art. I, § 8; <u>Commonwealth v. Gray</u>, 503 A.2d 921 (Pa. 1985) (adopting the standard set forth in <u>Illinois v. Gates</u>, 462 U.S. 213 (1983)).  Under a totality of the circumstances analysis, the task of the issuing authority is:

> [S]imply to make a practical, common-sense decision whether, given all the circumstances, set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

<u>Commonwealth v. Smith</u>, 784 A.2d 182, 185 (Pa. Super. 2001) (quoting <u>Commonwealth v. Coleman</u>, 769 A.2d 462,464 (Pa. Super. 2001) (internal citations omitted)).  "However, if a search warrant is based on an affidavit containing deliberate or knowing misstatements of material fact, the search warrant is invalid."  <u>Commonwealth v. Clark</u>, 602 A.2d 1323, 1325 (Pa. Super. 1992) (citations omitted).  "To succeed

in attacking a warrant, a defendant must come forward with 'allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.'" See Commonwealth v. Gomolekoff, 910 A.2d 710, 715 (Pa. Super. 2006) (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)).

In the instant case, a search warrant was executed on Petitioner's residence and his vehicle. Petitioner first argues that Attorney Bayley was ineffective for failing to file a Motion to Suppress the search warrant, because the search warrant failed to provide a nexus between the homicide the police were investigating and the places to be searched. (Petitioner's PCRA Brief, at 11).

At the PCRA Hearing, Attorney Bayley agreed with PCRA counsel that there must be a nexus between the crime being investigated and the place being searched. (T.P. PCRA Hearing, at 27). Attorney Bayley explained why he believed the search warrant was supported by probable cause:

> He is identified as a suspect and I believe that the search warrants provide probable cause that he was involved in the situation . . . And, that is enough, I believe, under the circumstances to search his house the next day and his vehicle that's sitting right next to it.

(Id. at 29-30). Attorney Bayley also indicated, when questioned on cross-examination, that he did not believe it was unusual for the police to execute a search warrant on a suspect's residence in the hopes of locating a murder weapon when a weapon was used in the commission of a murder, and further noted that it thought it would be unusual if the police acting differently. (Id. at 40).

Review of the search warrant indicates that it included information that the Petitioner was recognized by one of the witnesses as one of the two suspects to enter the residence on the night of the murder, "as he knew him to be associated with a female named Erica whom had been to the residence in the past." (Search Warrant, October 23, 2012, at 2). The search warrant also provided that:

> On [the day after the incident giving rise to the instant case] information was developed that Jason C. Shauf resided at 117 Sollenberger Road in Chambersburg. A check of the residence revealed that a vehicle associated with and registered to Jason C. Shauf . . . was parked in the driveway of said residence.

> A neighbor reported seeing Jason C. Shauf and Carl
> Varner at 117 Sollenberger Road in the early morning
> hours of this same date.

(Id.).  Under a totality of the circumstances analysis, the information
contained in the search warrant, in tandem with the testimony
provided by Attorney Bayley, persuade this Court that there was a
nexus between the homicide the police were investigating and the
places to be searched.  Therefore, the Court concludes the first basis
raised by Petitioner in support of his argument that Attorney Bayley
was ineffective for failing to file a suppression motion regarding the
search warrant—that it failed to provide a nexus between the homicide
the police were investigating and the places to be searched—is
meritless.

The Court is likewise persuaded that the second basis Petitioner
argues should have led Attorney Bayley to file a Motion to Suppress of
the search warrant—that the search warrant failed to disclose facts
bearing on the unreliability of the identification of Petitioner—lacks
arguable merit.  In support of the instant issue, Petitioner points to the
fact that only one of the five witnesses present at the residence on the
night of the murder identified Petitioner as one of the two suspects.
However, at the PCRA hearing, Attorney Bayley testified that while
Petitioner is correct that only one witness positively identified
Petitioner as a suspect, the other four witnesses gave descriptions
matching the Petitioner.  (T.P. PCRA Hearing, at 30-32).  Attorney
Bayley continued, explaining that the four witnesses:

> [C]ouldn't identify him from the standpoint of having seen
> him before knowing who he was.  I think negative
> information would be if you have four other witnesses
> saying, suspect number 2 was somebody else, identified
> him as entirely being some other individual as opposed to
> just simply not knowing his name or having seen him
> before.

(Id. at 31).

It is true that a search warrant is rendered invalid if it is based on "an
affidavit containing deliberate or knowing misstatements of material
fact".  Clark, 602 A.2d at 1325.  However, the Court, like Attorney
Bayley, is not persuaded that the search warrant's failure to indicate
that there were five witnesses, and only one witness identified
Petitioner, rises to the level of "deliberate or knowing misstatements of

material fact", <u>id.</u>, or "allegations of deliberate falsehood or reckless disregard for the truth", <u>Gomolekoff</u>, 910 A.2d at 715 (quoting <u>Franks</u>, 438 U.S. at 171).  Accordingly, Petitioner's second basis raised in support of his instant ineffectiveness claim lacks arguable merit, thereby failing the first <u>Pierce</u> prong.

(Doc. 20-7 at 21-25).

In considering pretrial counsel's failure to file a motion to suppress the search warrant—on the basis that it failed to provide a nexus between the homicide and the places to be searched—the PCRA court evaluated the information contained in the search warrant and the testimony provided by pretrial counsel and concluded there was a nexus between the homicide and the places to be searched. The PCRA court thus found that his claim lacked arguable merit.  Consequently, pretrial counsel could not be deemed ineffective for failing to pursue a meritless claim.

The PCRA court next addressed Shauf's claim that pretrial counsel was ineffective for failing to file a motion to suppress the search warrant because it failed to disclose facts bearing on the unreliability of the identification of Shauf. The PCRA court concluded that the search warrant's failure to indicate that only one of the five witnesses positively identified Shauf was not a "deliberate or knowing misstatement[ ] of material fact" or a "deliberate falsehood or reckless disregard for the truth."  (Doc. 20-7 at 25).  Thus, the court concluded that this claim lacked arguable merit and counsel could not be deemed ineffective.

We find that the above referenced findings and conclusions are objectively reasonable applications of <u>Strickland</u>.   At the PCRA hearing, pretrial counsel testified that Shauf was identified as a suspect, the search warrant indicated that

one witness positively identified Shauf as the individual who entered the residence on the night of the murder, four other witnesses described an individual similar to Shauf, and a weapon was used in the murder.  (Doc. 20-6 at 29-32, 40).  Pretrial counsel therefore believed the search warrants possessed the requisite probable cause to search Shauf's home and vehicle.  (Id. at 29-30).  Based on this testimony and the information contained in the search warrants, the PCRA court concluded that Shauf's underlying claims lacked arguable merit and pretrial counsel was not ineffective in failing to file suppression motions.  The PCRA court reasonably applied the Strickland standard in so finding.  Shauf is not entitled to relief on this claim.

### G.    Ground Seven

Shauf next alleges that PCRA counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to request a mere presence jury instruction.  (Doc. 2 at 33-34).  Shauf "concedes that this claim is procedurally defaulted."  (Id. at 33).  He seeks to have this court review the merits of the claim under Martinez v. Ryan, 566 U.S. 1 (2012).  (Id.)

Martinez recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default.  Specifically, Martinez holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Id. at 9.  To successfully invoke the Martinez exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial,"

meaning it has "some merit," id. at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding.  Id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014). Both prongs of Martinez implicate the controlling standard for ineffectiveness claims first stated in Strickland: (1) that counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687

Shauf argues that the procedural default of this claim should be attributed to PCRA counsel because "PCRA counsel was ineffective for failing to raise in the initial PCRA petition that trial counsel was ineffective for failing to request a mere presence jury instruction."  (Id.)  Shauf's contention necessitates a Martinez analysis.

The Due Process Clause of the Fourteenth Amendment requires the government to prove beyond a reasonable doubt every element of the crime with which a defendant is charged.  In re Winship, 397 U.S. 358, 364 (1970); United States v. Gaudin, 515 U.S. 506, 510, 522-23 (1995).  Accordingly, a criminal conviction violates due process when the trial court fails to instruct the jury on an element that the prosecution must prove beyond a reasonable doubt.  Gaudin, 515 U.S. at 522-23. More specifically, where a petitioner alleges no specific constitutional violation, the issue is "whether the ailing instructions by themselves so infected the entire trial that the resulting conviction violates due process," Cupp v. Naughten, 414 U.S. 141, 147 (1973), not merely whether the instruction is "undesirable, erroneous, or even 'universally condemned,'" id. at 146; see Estelle, 502 U.S. 62.  However, a single deficient instruction does not render a judgment of conviction invalid if the charge,

considered as a whole, clearly informs the jury of the correct legal principle.

Henderson v. Kibbe, 431 U.S. 145, 153-55 (1977); see also Commonwealth v. Baker,

963 A.2d 495, 507 (Pa. Super. Ct. 2008) ("A charge is considered adequate unless the

jury was palpably misled by what the trial judge said or there is an omission which

is tantamount to fundamental error.  Consequently, the trial court has wide

discretion in fashioning jury instructions.").

Shauf was convicted of second-degree murder, burglary, robbery,

kidnapping, unlawful restraint, criminal conspiracy to robbery, and criminal

conspiracy to burglary.  Of note, criminal conspiracy is defined as follows:

> A person is guilty of conspiracy with another person or persons to
> commit a crime if with the intent of promoting or facilitating its
> commission he:
>
>> (1) agrees with such other person or persons that they or one
>> or more of them will engage in conduct which constitutes
>> such crime or an attempt or solicitation to commit such
>> crime; or
>
>> (2) agrees to aid such other person or persons in the planning
>> or commission of such crime or of an attempt or
>> solicitation to commit such crime.

18 PA. CONS. STAT. § 903(a)(1), (2).  Mere presence at the scene of a crime is

insufficient to sustain a conviction for conspiracy.  Commonwealth v. La, 640 A.2d

1336, 1344-45 (Pa. Super. Ct. 1994).

Here, the conspiracy charge was clear and comported with Pennsylvania's suggested standard jury instruction on conspiracy.[7]  The trial judge instructed the jury on the conspiracy charge as follows:

> In instruct you that they were partners if they conspired to commit the robbery and/or the burglary and/or the kidnapping.  Two people conspire to commit a crime if, with the intent of encouraging or helping the commission of the crime, they agree that one or both of them will commit the crime or attempt or request to commit it or that one of them helps the other in planning or committing it or attempting to commit it or asking it to be committed.

> Their agreement may be expressed in verbal.  They may talk about it.  Or their agreement may be unspoken, one that can be inferred from the words, conduct, or surrounding circumstances.  Each knows what the other is thinking.  They don't have to talk about it.

> Finally, to complete the conspiracy, one of the conspirators must commit what the law calls an overt act.  And that overt act is an act by either a member of the conspiracy that would serve to further the goal of that conspiracy.

> What I mean by furthering the goal, a partner's acts that kills is not in furtherance of the felony if the partner does the act for his own

---

[7]  Pennsylvania's Standard Jury Instruction 12.903B provides:

I want to point out that, if you believe that (name of alleged co-conspirators) committed the (_____) and that the defendant was in their company, present at the scene and knew they were committing that crime, you cannot infer, from those facts alone, that the defendant was guilty of conspiracy.  The defendant is not guilty unless he and the others had an agreement or common understanding and shared the intention to commit the (_____).  Consider all the evidence, including the evidence of the defendant's presence and knowledge and the words and behavior of the defendant and the others, when you are deciding whether the required elements of agreement and shared intent have been proven beyond a reasonable doubt.  Put simply, if you convict the defendant of the conspiracy charge, it must be because he was a party to a conspiracy and not just a knowing spectator to a crime committed by his companion.

PA. STANDARD JURY INSTRUCTIONS 12.903B.

personal reasons that are independent of the felony.  A partner's act that kills is in furtherance of the felony if he does the act while fleeing from the scene and there's no break in the chain of events between the felony and the act.

However, even though the partner's act that kills may seem to meet the requirements, it's not in furtherance of the felony if the partner does the act for his own personal reasons that are independent of the felony and the effort to flee.

(Doc. 25-1 at 38, N.T. 143:19-144:21).

Because the jury was required to find that Shauf entered into an agreement with at least one co-conspirator to a crime, the jury necessarily had to find more than mere presence.  The jury instructions were sufficient.  It is clear that Shauf's underlying claim—that trial counsel was ineffective in failing to request a mere presence jury instruction—lacks merit, and PCRA counsel cannot be ineffective for failing to raise this issue.  See Strickland, 466 U.S. at 691.  Consequently, Shauf's procedural default cannot be excused based on Martinez.  Federal review is therefore precluded.

## H.   Ground Eight

Lastly, Shauf asserts that when his claims are viewed as a whole, he is entitled to habeas relief.  (Doc. 2 at 34-35).  The Superior Court found that, given the PCRA court's denial of the individual ineffective assistance of counsel claims, Shauf's "bald averment of 'cumulative prejudice'" did not merit relief.  Shauf, 2018 WL 4998263, at *2.

The Third Circuit has held that "[i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermine the fundamental fairness of his trial and denied

him his constitutional right to due process." <u>Fahy v. Horn</u>, 516 F.3d 169, 205 (3d Cir. 2008).  Cumulative errors will be deemed harmful only when "they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." <u>Id.</u> (internal quotation marks omitted).  To satisfy this standard, a petitioner must show the errors complained of "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986).  In this regard, the Third Circuit "read[s] United States Supreme Court precedent as establishing the principle that the stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair." <u>Marshall v. Hendricks</u>, 307 F.3d 36, 69 (3d Cir. 2002).

The Pennsylvania Supreme Court has held that "no number of failed claims may collectively warrant relief if they fail to do so individually." <u>Commonwealth v. Miller</u>, 987 A.2d 638, 672 (Pa. 2009) (citing <u>Commonwealth v. Washington</u>, 592 Pa. 698, 927 A.2d 586, 617 (2007); <u>Commonwealth v. Tedford</u>, 598 Pa. 639, 960 A.2d 1, 56 (2008)).  Thus, there is a disparity between Pennsylvania precedent and the federal standard regarding claims of cumulative prejudice, as federal law permits a claim of cumulative prejudice even when the individual claims fail.  <u>See</u> <u>Fahy</u>, 516 F.3d at 205.  Since the state court presumably did not examine this claim in light of federal law, the pre-AEDPA standards of review apply.  <u>See</u> <u>Everett v. Beard</u>, 290 F.3d 500, 508 (3d Cir. 2002).  "Under that standard, a federal habeas court owes no deference to a state court's resolution of mixed questions of constitutional law and fact . . .

51

whereas the state court's factual findings are presumed to be correct unless [ ] the state court's findings are not fairly supported by the record." Id. (citations and internal quotation marks omitted).

Shauf is not entitled to relief on his claim of cumulative error.  The evidence presented during trial strongly supports the finding that Shauf was at the crime scene and committed the acts as charged.  See Marshall, 307 F.3d at 69 ("[T]he stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair.").  We will deny this final claim for relief.

## V.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), a petitioner may not appeal from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  As the Supreme Court has explained,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Shauf failed to demonstrate that a

certificate of appealability should issue.

**VI.**   **Conclusion**

We will deny the petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated:        January 19, 2022